Riddell, Inc. v. United States Mr. Gluck. Thank you, Your Honor. Your Honor, Daniel Gluck, firm of Simon, Gluck & Cain, representing Riddell, and with me today is my associate, Mariana Del Rio. Just on behalf of our client and ourselves, we wish to thank the Court for giving us this opportunity. If it pleases the Court, we have argued that the subheading that describes football articles and equipment, parts and accessories thereof, encompasses articles that are required to be used in the sport of football, designed, intended, and used only while playing football, designed, intended, and only used with protective padding, and are, by their design and intended use, dedicated, in their condition as imported, to being protective devices. Mr. Gluck, isn't the key fact that works against you that the clothing is not sold, does not, as sold, does not have padding? The government makes that... Therefore, is not necessarily protective? Well, again, the government makes that argument, and certainly the lower court agreed. I think that the problem with that position is these items are only sold to be used with the pad, and they are only used with the pad. The item in itself has no... What about all these kids? You see them on television, some of them aren't kids. Grown people walk around with these football shirts with someone's name and number on them. Well, if we're just keying in on the shirts, the shirts that you see people wearing are called, I think they're called store cut. Those are different items than the items we're discussing here. These items are only used in the sport of football. They're not used in any other context. People do not wear these on the street. Because the ones on television don't have the extra room for the shoulders and... The ones that the fans are wearing, but the ones that the football players are wearing certainly are designed not only to be fuller cut, they have extra padding in the shoulders, they're designed to taper here to hug and push down the shoulder pads. In fact, if you look at any given Sunday and you see a football player with the shoulder pads off, it's usually off with the shirt. They put them together because they're so attached once they put them on. And the idea is to keep the pads from flying up and hitting them in the neck or the chin or the head or anything like that. Especially in a full contact. When we began this litigation, the court had issued, this court had issued its decision in Bauer Nike. And it really held because the items were specifically designed and intended for use only while playing football. I mean hockey in that case. Can I ask you though, it may be true that these are used only in playing football. But what do you do with the pretty express description in our Le Mans case of the standard that to come within the sports equipment classification, the item has to be designed, I'm sorry, almost exclusively used for protection. These items don't seem like they are used almost exclusively for protection. Well, I feel there's many differences between our products and the products described in Le Mans. But just keying on this one point. The idea is these items, the pants, let's take those as an example. They are designed in their condition as imported to have the sleeves and other additions that allow them to be used in connection with the pads and create this protection. So in their initial design and ultimate use, they can only be used to provide for the pads and they're only used for protection. So I don't think the fact that they're not imported with the pads somehow allows customers or the court to ignore totally how they're actually used and in what context they're used. And in both those situations, they're only used with the pads. So I think in that sense, they're protective in the way that Le Mans said we are enumerating items in the explanatory notes. If the items appear to be like that, then they are protective. In Bauer, the court recognized that the pants portion, if we're going to call it that, was integral to the operation of the pads. Yet it was somewhat subordinate because it wasn't apparel-like. And to argue that by removing the pads, that somehow the pants become more apparel-like or less protective, I think is ignoring the actual use. Okay, Mr. Clark, are you drawing a distinction among the various kinds of items of apparel? They have widely different duty rates, I gather, from 10% to 32%. Well, yes, obviously. We've thought a lot about this case and the question of whether we are able to convince the court that these items, as imported, are described in the broad-heading football equipment parts and accessories. If they're not football equipment per se, but they're parts or accessories, then we would have, I guess, lost an academic exercise, but our client would have won a serious business victory. They would save and it would be duty-free, as opposed to dutiable either as general apparel or sports apparel. Okay. There's a practical consideration, just as there is a practical difference between how these goods are used as relates to the items in Le Mans. The items in Le Mans were used outside of the context of any sport. Their design and intention made them multipurpose-type items. In this case, they're only used in the sport of football and only used with the pads. In the context of the decision in Bauer when we felt most confident that the items would be described as football equipment, in consideration of the definition as purported by the court at that point, the court then had its decision in Le Mans, and we were compelled to address the clarification of the definition of sports equipment. And that's, again, when we look to a connection between the items, number one, as different from Le Mans, but also as similar to Bauer, and also as protective. The fact that the explanatory notes enumerate pads and padding, they also enumerate other articles like the fencing mask, which don't have padding. And I think this court in Bauer recognized that the item is – there's nothing in the lower court or from what the government had been saying in the Bauer case that would lead them – or Le Mans – that would lead this court to say that these are not integral parts of this protective system they use with the pads. But in the same token, the court is recognizing the fact that these are not necessarily pads in the way that you would describe them for sports apparel. They were something somewhat subordinate to the pads in the context of being brought in together. Customs has since recognized that if football pants come in with the pads permanently attached, that they are sports equipment. And they seem to be making a distinction between whether or not the pads were removable, that somehow that would diminish or not make these items classifiable as sports equipment. Now, this court in Bauer had addressed hockey pants with pads in and out. They were removable in some of the items. And it did not persuade the court to somehow separate them out or consider these to be not operable units. So, again, for practical purposes, if we say that these items are covered under the broad heading of sports equipment, that's one thing. If we say that they're not parts, as the government is also saying, then I find that to be inconsistent with the way the court had been deciding both Bauer and Le Mans. We describe these articles as not apparel-like, and I think that's consistent with the way the court addressed both Bauer and Le Mans. They're almost exclusively protective in that they work only with the pads, and in that guise, they are fully protective. But more to the point, even in their condition as imported, their only design is to accommodate pads and to work towards protection. They're not an item sold independent for any other purpose than to provide protection. Again, we don't see people running onto the hockey field or the football field wearing pants without pads. It would subject them to serious injury. Neither do we see athletes running on the field with pads duct-taped to their thighs. They need the pants. Otherwise, this doesn't operate as intended. Of course, there's a way around this, which is to have them exported with the pads. There are any number of business reasons why that's not practical. One is shipping costs, because if you put them in, they're much thicker and they take up more room and space in the cargo. But more to the point, a lot of the pads that are used and designed specifically to be used with these pants are not made by the same manufacturer. You may have a manufacturer that's very adept at making football pants, but not very good at making pads. And you might even have a US industry making pads for pants that are made in the Philippines. That doesn't help your point, though, does it? It emphasizes the separateness of them. They come from different sources, and also that there are economic reasons. In other words, it's a two-edged sword. You know, Your Honor, I would see it that way if they were not designed and intended only to work together. The court in Rollerblade makes a very good point about the significance of that word in the context of the definition in Rollerblade. And in this context, what really separates us from Lamont's is they are only used with the pads, and they are only used in the context of football for that purpose. So I think that's a great distinction. And I think that the word only there is something that had been overlooked by the lower court and customs. I think customs has also raised the issue that, well, these pads are made separately, so somehow that makes them different than the pads that are sewn into the item. But any number of parts are manufactured by different manufacturers, but they're only used for the particular purpose to join to another particular item. And that's the same here. These pads are designed to fit into these pants. They are marketed that way, sold that way. And I think that the record supports the conclusion that that is the case. So I think that's the main distinction that I would draw. So, again, I don't think that weakens our argument. It just is a different argument. Do you want to save your rebuttal time? Yes. Yes, Your Honor. Let's hear from the government. Ms. Powell. Good morning. May it please the court. The trial court's decision in this case should be affirmed because the merchandise at issue here simply does not have any protective features. As imported, the merchandise is simply jerseys, pants, and girdle. They offer no protective features. Is the government's position that if it's possible or even occasional that this apparel is used without the pads and not for protection, that the classification is as apparel, even if, let's say, 90% of the usage is, as Mr. Gluck has described it, that nonetheless it should be classified for the minority use? Yes. Yes, that's the government's position. What we're relying on is this court's decision in Lamont's. I thought that the tariff classifications related to the predominant use of the product. These provisions, 9506, this court has interpreted that heading in Bauer Nike and in Lamont's as more or less EO nominee provisions. If you consider the actual definition that was established in Lamont's, use is taken into consideration. It's necessary, useful, and appropriate. Then Lamont's added to it and said if the merchandise is worn by a user, it has to have protective features. Use is sort of encompassed in that definition. It's not like we disregard the use, but as heading 9506 and the explanatory notes show, that use is not the sole criterion. You still have to do further analysis. Is the idea that the use, even if a minority use, if it carries a higher tariff rate, that that's the appropriate classification? Again, yes. We don't look at use. Our decision on how to classify merchandise is not based on the actual duty rate. In this case, it's based on this court's decision in Lamont's. In Lamont's, you look at the physical features of the merchandise. If it's textile, it has to be minimal textile components and almost exclusively protective in nature. Here, we don't have that. How come you don't have it? I didn't see that the government made any case or presented any evidence that you don't have it. Well, there's evidence in the record, again, in the facts that the merchandise, the jerseys are 100% polyester. There is no padding. There's no dispute over that. The pads are sold separately. The pants are all textile. The pads are sold separately, and the girdles are more or less— Of course, it's apparel. Naturally, it's textile. Well, that's the point I'm making is that there are no protective features in it. If you look at the explanatory note to heading 9506, just like this court did in Lamont's, you'll see that all of the exemplars in that are not articles worn by the user, and those articles that are worn by the user have minimal textile components. So in that theory, it wouldn't make any difference if it were imported with the tabs in place? If it was imported with the pads in place, I think it might change the outcome, depending on how much textile and how much padding. I personally have never seen football pants before this case, but if they came in, we would have to evaluate that in light of Lamont's. You said the pads are sold separately as pads, or they're just imported separately? They weren't imported. In this case, the girdles, the jerseys, and the pants were imported by themselves. There were no pads. So the user has to go out and buy the pads. So I'm assuming they come in separately, imported separately. They were not imported with these articles. But what about the selling? When you go to the store to outfit yourself for your high school football team, are you buying the items separately, the pads? And do people use the same pants, for example, and get new pads when the pads go bad or vice versa? It's my understanding that based on the advertising, you'll see some advertising in the record, the pants are sold separately. So you go to the store and you buy the pads and put in the pants. Why would one not consider as protective an item that, and just assume this with me for a minute, is used only in conjunction with pads so that together they are providing protection? Because, in fact, the pads would not, again assume this, would not work without a holder like these pants. I think the fundamental principle here is that we're looking at this merchandise in its condition as imported. And in its condition as imported, it provides no protection. Yes, further down the line, coupled with separately imported and obtained pads, it works as a system, but in its condition as imported, it's nothing more than pants, a jersey, and girdles. There are no protective features in that. Even if 100% of its intended and actual use is to combine with something to create a protection for the wearer? I think it still comes under LeMans. LeMans doesn't really look at intended use. It has these physical characteristics that you look at the merchandise, and if they're there, they're sports equipment. If they're not, they're not sports equipment. So even if, under LeMans, even if these pants are created to form this protective system, LeMans says that they're still not sports equipment. Can I ask you one question about, I think I've read your brief correctly on this, on the girdle question? Yes. Assuming that it is not classified in Chapter 95, you don't dispute the reclassification to, what is it, 61143030 from the 62 Pro? No, we don't. Yes, no, we don't dispute 611430 based on the facts of this case. That, yes, if they're not sports equipment pursuant to LeMans, we don't dispute it. I assume that's because these girdles are not used for body support, but essentially to hold in place the padding. Yes, that is the reasoning. Okay. I just wanted to mention that if we focus on use and whether it's necessary, it sort of rolls us back to Bauer Nike and sort of disregards LeMans. Riddell hasn't offered a way to sort of have their interpretation of sports equipment coexist with LeMans. It sort of takes us back, and it doesn't take into account the explanatory note with the examples. There's nothing in there that's almost 100% apparel. It's all separately items that are not worn on the body. I'm sorry, those other items are certainly worn on the body. It's just that they're not worn for the purpose of covering them for certain kinds of comfort. They are, in fact, used for protection of a sort. Yes, the example that came up in LeMans and that keeps coming up in this case is example 13, the protective equipment for sports, and it does have fencing masks and things that are held on the body, but it prefaces it by saying protective equipment for sports and then gives those examples. So it's clear here, just by looking at this, it doesn't have anything. It doesn't say jerseys, pants, girdles. These are really protective items that are worn on the body in and of itself in their condition, nothing added. And I also wanted to mention that this case is, in terms of the protective features, is even less than the merchandise that was at issue in LeMans. In that case, they were motorcycle jackets that had significant padding. They were made out of materials that protected the rider, as well as the pants had foam padding. So in that case, there was padding and protective features. But they recorded the motorcycle jackets have the padding in place, do they not? Yes, yes, the padding was in place. And in that case in LeMans, this court held that those motorcycle clothes were not sports equipment. They were apparel-like items. So in this case, we have even less protection. We have no protection, no padding, nothing, no foam. So this case is even, I guess, less protective in nature than the items at issue in LeMans. Oh, I also wanted to mention the argument that Riddell makes about parts and accessories. The court below addressed it by saying that the articles are not parts or accessories of the pads because the articles are separate and distinct articles, commercial entities. They can function as intended by themselves. So I just wanted to make mention of that. That's a facts question, isn't it? Whether something's a part or not? No, whether it's used separately. No, I don't think it's a facts question. They are used separately. They're imported separately, and they're intended to function as going over the body. And in their condition as imported, they function fully. And they're different commercial entities. They're separate and apart from the pads. So according to Rollerblade, the merchandise here would not be parts or accessories. Okay. Thank you, Ms. Powell. Thank you. Mr. Burke. Thank you, Your Honor. Please, the court. I don't think the government is offering any new insight to their argument. Let me just take a few points. Number one, LeMans did have padding, but it was incidental padding. And as we established, it was not only used in the sport of motocross. It had uses outside of that, just in general motorcycle riding. Also, it was not designed in its condition as imported to accommodate other pads or any of the enumerated items in the explanatory notes. I think the government also suggests that they look at use or they don't look at use. LeMans looked at use. Bauer looked at use. All of the other citations we used to describe the court's determining, even in a neo-nominee setting, whether an item is that item, the court looks to use. If what the government is saying is that the item is to be classified in its condition as imported without regard to its intended use or without regard to its design and function, then I think it's at odds with Pompeo, which talked about the government seems necessarily to rely upon the rule that classification is to be determined by condition at the time of import. And it is saying that in that case, superchargers are not parts of autos unless they would not function, the auto would not function without the use of the supercharger. We are not talking about the line of cases in Willoughby. We're talking about an item that is specifically designed for only one purpose. It is designed that way when it's brought in, and it's only used that way. You buy pads, you buy them to put in the pants. You don't buy them to, as I say, the world that the government is creating, a world of football players with pads duct taped to their thighs and pants that are flowing in the breeze without any protection. That's not the reality, and I don't think the court looks beyond the reality of how these items are actually used in coming to terms with what the proper classification is. Again, I thank the court. Any more questions for Mr. Clark? Thank you, Mrs. Clark and Ms. Powell. The case is taken under submission.